UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA GARRETT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOVERNING BOARD OF OAKLAND UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 21-cv-03323-HSG<br><br>**ORDER RE DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 14, 34 |

On May 4, 2021, Plaintiffs Leslie Tavernier ("Plaintiff Tavernier") and Gina Garrett ("Plaintiff Garrett") brought this lawsuit alleging that they were unjustifiably and discriminatorily disciplined and terminated by the Oakland Unified School District ("OUSD"). *See* Dkt. No. 1 (or "Compl."). The Complaint names as defendants the Governing Board of Trustees of the Oakland Unified School District (the "OUSD Board"), as well as three OUSD employees—Kyla Johnson-Trammell, Tara Gard, and Jenine Lindsey—who are being sued in their individual capacities (collectively, the "Individual Defendants"). *See id.* Both the OUSD Board and the Individual Defendants filed motions to dismiss the Complaint, and both motions are fully briefed. *See* Dkt. Nos. 14 ("OUSD Mot."), 16 ("OUSD Opp."), 21 ("OUSD Reply"), 34 ("Mot."), 48 ("Opp."), and 51 ("Reply").[1] Having considered the parties' arguments, the Court **GRANTS** the OUSD Board's Motion to Dismiss with prejudice and **GRANTS IN PART and DENIES IN PART** the Individual Defendants' Motion to Dismiss.[2]

---

[1] The Court finds the motion suitable for decision without oral argument and deems the matter submitted. *See* Civ. L.R. 7-1(b).

[2] Both parties ask the Court to take judicial notice of numerous documents. *See* Dkt. Nos. 15, 17, and 29. The Court finds these documents unnecessary for the purposes of resolving the questions of law the pending motions to dismiss raise and accordingly declines to take judicial notice of them. *See Silvester v. Harris*, 41 F. Supp. 3d 927, 936 (E.D. Cal. 2014)) ("The Court will not

## I. BACKGROUND

Plaintiff Tavernier was employed by OUSD as the Financial Services Director of Budget. Compl. ¶ 5. In that capacity, she oversaw a staff of 14-16 financial analysts. *Id.* ¶ 18. The Complaint alleges that some of those financial analysts received stipends while four financial analysts—three of whom were Black employees approximately sixty years old—did not. *Id.* More specifically, the Complaint alleges that Defendant Tara Gard intentionally withheld the stipends from Tavernier's employees. *Id.* ¶ 20. Tavernier opposed this perceived discrimination by processing the stipends herself without the approval of Human Resources. *Id.* As a result, Tavernier was put on administrative leave. *Id.* ¶ 21.

Jenine Lindsey, OUSD's Director of Labor Relations, investigated Tavernier's alleged misconduct. *See id.* ¶¶ 28-30. Plaintiff Tavernier alleges that, during this investigation, Jenine Lindsey falsely represented herself as a neutral arbiter and attorney despite ultimately being the prosecutor in Tavernier's *Skelly* hearing. *Id.* Plaintiff Tavernier was ultimately terminated for financial mismanagement. *Id.* ¶ 21. Based on these facts, Plaintiff Tavernier brings three claims against the Individual Defendants and the OUSD Board: (1) federal claims for violation of the Equal Protection Clause of the Fourteenth Amendment; (2) federal claims for violation of the Due Process Clause of the Fifth and Fourteenth Amendments; and (3) a state law claim for violation of California's Fair Employment and Housing Act (or "FEHA"). *See id.* at 6, 10, and 18.

Plaintiff Gina Garrett was employed by OUSD as the Senior Executive Director of Budget. *Id.* ¶ 4. The Complaint alleges that the OUSD Board, through Defendant Kyla Johnson-Trammell, approved the hiring of Preston Thomas, a white man, to be the Chief Services & Support Officer, and Plaintiff Garrett's supervisor, even though Thomas had no relevant experience in school finance or managing financial staff. *Id.* ¶ 36. When Defendant Johnson-Trammell told Plaintiff Garrett that Preston Thomas would be evaluating her, Plaintiff Garrett objected on the grounds that "he had no experience in anything that would allow him to fairly evaluate her." *Id.* ¶ 40. She

---

comb through the hundreds of pages of proposed exhibits and make rulings if an exhibit is not actually cited and specifically relied upon by a party.") *rev'd and remanded on other grounds*, 843 F.3d 816 (9th Cir. 2016; *Cf. Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 792–93 (8th Cir. 2012) (Courts need not take judicial notice of irrelevant evidence).

1  then requested that someone from the County Office of Education evaluate her if no one at OUSD
2  was able to evaluate to do so. *Id.*
3        Plaintiff Garrett alleges that she was placed on paid administrative leave pending
4  investigation of misconduct on February 18, 2020. *Id.* ¶ 41. Although the *Skelly* hearing officer
5  issued a recommendation not to terminate Garrett, she was later notified that her position would be
6  eliminated due to lack of funds. *Id.* ¶ 52, 59. Plaintiff Garrett also alleges that OUSD violated the
7  California Education Code by later advertising a position similar to her old job without informing
8  her of the opening. *Id.* ¶¶ 59-62. Like Plaintiff Tavernier, Plaintiff Garrett brings three claims
9  against the Individual Defendants and the OUSD Board: (1) federal claims for violation of the
10 Equal Protection Clause of the Fourteenth Amendment; (2) federal claims for violation of the Due
11 Process Clause of the Fifth and Fourteenth Amendments; and (3) a state law claim for violation of
12 California's FEHA. *See id.* at 11, 14, and 18.

## II.   LEGAL STANDARD

      Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

3

2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III.   DISCUSSION

The Complaint alleges that OUSD disciplined and terminated Plaintiffs in violation of their federal Equal Protection and Substantive and Procedural Due Process rights under the U.S. Constitution, as well as their rights under California's Fair Employment and Housing Act ("FEHA"). *See generally* Compl. Defendants' motions seek to dismiss the Complaint in its entirety. For the reasons explained below, the Court grants the OUSD Board's Motion to Dismiss with prejudice. The Court denies the Individual Defendants' Motion to Dismiss only as to Plaintiff Garrett's sex discrimination claim and grants the motion as to the remaining claims.

#### A.   Eleventh Amendment Immunity

The OUSD Board contends that it is immune from Plaintiffs' claims under the doctrine of sovereign immunity. *See generally* OUSD Mot. The Court agrees and dismisses the OUSD Board from this action.

The Eleventh Amendment to the U.S. Constitution embodies the principle of "sovereign immunity" and bars a federal court from hearing claims by private citizens against state governments, their agencies, or the officials of those agencies unless the state consents to suit, or Congress has expressly abrogated the state's immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 116 S. Ct. 1114 (1996); *Natural Res. Def. Counsel v. Santa Monica Baykeeper*, *Inc.*, 96 F.3d 420, 421 (9th Cir. 1996). Ordinarily, courts in this Circuit apply a multi-factor balancing test to determine whether a governmental agency is an "arm of the state" that is entitled to Eleventh Amendment immunity. *See Belanger v. Madera Unified School Dist.*, 963 F.2d 248, 250–51 (9th

1  Cir. 1992). But because California's school districts are "controlled and funded by the state
2  government rather than the local district," the Ninth Circuit has held that they are "arms of the
3  state" under the Eleventh Amendment and are therefore entitled to sovereign immunity. *Id.* at
4  251; *see also Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007)
5  ("[A] California school district and county office of education are arms of the state for purposes of
6  Eleventh Amendment sovereign immunity."). There is no question, then, that OUSD is an "arm of
7  the state" entitled to Eleventh Amendment immunity from Plaintiffs' claims.

8  In this case, however, Plaintiffs sued OUSD's Governing Board of Trustees instead of
9  OUSD itself. But the Court does not find this to be a meaningful distinction. In California, the
10  authority of a school district's governing board is coextensive with that of the school district itself.
11  *See* California Education Code § 35160 ("[T]he governing board of any school district may initiate
12  and carry on any program, activity, or may otherwise act in any manner which is not in conflict
13  with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes
14  for which school districts are established."). Courts in this Circuit have accordingly reasoned that
15  Eleventh Amendment immunity also extends to governing boards. *See Brouillette v. Montague*
16  *Elementary Sch. Dist.*, 2014 WL 2453036, at *2 (E.D. Cal. May 30, 2014) ("And to the extent that
17  a school board's authority is coextensive with the authority of a school district under state law, a
18  school board in California is likewise a state agency for purposes of the Eleventh Amendment.").[3]
19  The Court agrees with this reasoning and finds that the OUSD Board is an arm of the state for
20  purposes of Eleventh Amendment sovereign immunity.

21  There are three potential exceptions to sovereign immunity. A state may waive its
22  Eleventh Amendment defense; Congress may abrogate the states' sovereign immunity by acting
23  pursuant to a grant of constitutional authority; and a plaintiff may seek prospective injunctive
24  relief to remedy violations of federal law under the *Ex Parte Young* doctrine. *See Douglas v. Cal.*

---

[3] *See also Marin v. Eidgahy*, No. 10-CV-1906-MMA-RBB, 2012 WL 928250, at *4 (S.D. Cal. Mar. 19, 2012); *Windsor v. Marin Cty. Off. of Educ.*, No. 07-CV-02897 JSW, 2008 WL 360454, at *3 (N.D. Cal. Feb. 8, 2008); *Porter ex rel. Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 123 F. Supp. 2d 1187, 1198 (C.D. Cal. 2000), *rev'd sub nom. on different grounds Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064 (9th Cir. 2002).

*Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001).  Plaintiffs have not alleged that either of the first two exceptions apply, and the *Ex Parte Young* doctrine plainly does not apply here because Plaintiffs primarily seek monetary damages to remedy retrospective harms.  *See* Compl. at 19-22.  And to the extent the Complaint states plausible claims for injunctive relief, Plaintiffs lack standing to pursue them because the Complaint does not demonstrate that Plaintiffs are likely to suffer similar injuries in the future—particularly since both Plaintiffs are no longer employed by OUSD.  *See Caldwell v. Lefaver*, 928 F.2d 331, 335 (9th Cir. 1991) ("An individual's past exposure to alleged unlawful conduct is insufficient to establish standing to seek injunctive relief; instead, an individual must demonstrate the likelihood of similar injury in the future.").

For those reasons, the Court concludes that the OUSD Board is immune from Plaintiffs' claims.  Those claims are accordingly **DISMISSED** with prejudice and without leave to amend, and the OUSD Board is **DISMISSED** from this action.

### B.  Fourteenth Amendment Equal Protection Clause

Both Plaintiffs bring multiple Equal Protection claims against the Individual Defendants.  As currently pled, the Court finds that only Plaintiff Garrett's sex discrimination claim states a claim upon which relief can be granted and accordingly dismisses the remaining claims.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws" and therefore requires the state to treat all "similarly situated" people equally.  *See Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an "intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).  That is, a plaintiff must show that the defendant acted in a "discriminatory manner" and that the discrimination was "intentional."  *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003).  "Intentional discrimination" means that a defendant acted "at least in part because of a plaintiff's protected status."  *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

Plaintiff Tavernier brings Equal Protection claims against the Individual Defendants on

two bases. The first claim alleges that Plaintiff Tavernier was terminated for opposing the alleged discrimination and differential treatment of the African-American and older financial analysts who did not receive stipends. *See* Compl. ¶ 21. As currently alleged, this count does not state a plausible claim for denial of equal protection because it does not allege that Plaintiff Tavernier's discipline was motivated by any discriminatory intent based on her protected class or status.

The second claim alleges that Plaintiff Tavernier suffered "differential treatment" because she was disciplined for her unauthorized disbursement of stipends while another District employee, Defendant Tara Gard, was not disciplined for similar conduct. *Id.* ¶¶ 23-24. This count similarly fails to allege facts plausibly supporting the claim that Plaintiff Tavernier's "differential treatment" was motivated by any discriminatory intent based on her protected class or status. The Court accordingly finds that Plaintiff Tavernier has not stated a plausible claim for violation of the Equal Protection Clause. Because it is unclear whether Plaintiff Tavernier's claims could be cured by the allegation of other facts, the Court dismisses her Equal Protection Claims with leave to amend.

Plaintiff Garrett also brings Equal Protection claims against the Individual Defendants.[4] She first alleges that Defendant Kyla Johnson-Trammell approved the hiring of a white man, Preston Thomas, to be the Chief Services & Support Officer and her supervisor at a pay rate higher than hers, even though Thomas had no relevant experience in school finance or managing financial staff. *Id.* ¶ 36. Plaintiff Garrett further alleges that, in hiring Thomas over her, Defendants "disregarded" the fact that she had, among other things: (1) more than 28 years of experience in School Finance; (2) a bachelor's degree in school finance and a master's degree in education leadership; (3) and experience filling vacancies for OUSD in both the Chief Financial Officer and Chief Business Officer positions. *See id.* ¶¶ 4, 36-37. The Court finds that these allegations state a plausible prima facie sex discrimination claim under the Equal Protection Clause.

To state such a claim, a plaintiff may establish that government action was motivated by a

---

[4] The Court addresses Plaintiff Garrett's second count of her Equal Protection Claim in Section III.C.

7

1     discriminatory purpose by producing direct or circumstantial evidence demonstrating that a

2     discriminatory reason "more likely than not" motivated the defendant and that the defendant's

3     actions "adversely affected" the plaintiff in some way.  *See Ballou v. McElvain*, 14 F.4th 1042,

4     1050 (9th Cir. 2021).  Under the burden-shifting framework set out in *McDonnell Douglas Corp.*

5     *v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), a plaintiff may make out a prima facie case of

6     discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was

7     qualified for her position; (3) she experienced an adverse employment action; and (4) similarly

8     situated individuals outside her protected class were treated more favorably.  *Ballou*, 14 F.4th at

9     1050 (citing *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021)).

10          Plaintiff Garrett's allegations do so.  As a woman, she is a member of a protected class

11    who was allegedly qualified for her position but nevertheless experienced an adverse employment

12    action compared to an individual (Preston Thomas) outside of her class.  *See* Compl. ¶¶ 4, 36.

13    Assuming the Complaint's allegations are true, as the Court must at this stage in the litigation,

14    they plausibly allege that Defendant Kyla Johnson-Trammell's hiring of Preston Thomas over

15    Plaintiff Garrett was more likely than not motivated by a discriminatory purpose and that those

16    actions adversely affected Garrett.  Whether Garrett can prevail on the merits of her claim is an

17    issue for a later day.

18          The Individual Defendants' main argument to the contrary is that Plaintiff Garrett's Equal

19    Protection Claim is an "impermissible class-of-one claim" because it is "based solely on the

20    notion that a less-qualified 'White Male employee (Preston Thomas)' was hired for a position to

21    which Garrett felt she was entitled."  *See* Reply at 7-8.  This argument misunderstands the class-

22    of-one doctrine.  Although equal protection jurisprudence is typically concerned with

23    governmental classifications that affect groups of citizens differently than others, the U.S.

24    Supreme Court has recognized that "an equal protection claim can in some circumstances be

25    sustained *even if the plaintiff has not alleged class-based discrimination*, but instead claims that

26    she has been irrationally singled out as a so-called 'class of one.'"  *Engquist*, 553 U.S. at 601

27    (emphasis added).  Here, however, Plaintiff Garrett *has* alleged class-based sex discrimination.

28    The essence of her claim is that a less qualified man was hired for a position to which she, a

woman, was entitled. *See* Compl. ¶¶ 4, 36. The class of one theory therefore does not apply.

Because Plaintiff Garrett has stated a plausible prima facie claim that she was subjected to discriminatory treatment because of her sex in violation of the Equal Protection Clause of the Fourteenth Amendment, the Court denies the Individual Defendants' motion to dismiss this claim in its entirety. However, because the Complaint does not allege that Defendants Tara Gard or Jenine Lindsey were involved in the hiring of Preston Thomas over Plaintiff Garrett, those defendants are dismissed from Plaintiff Garrett's sex discrimination claim.

### C. Fourteenth Amendment Retaliation

Both Plaintiffs also bring Fourteenth Amendment Equal Protection claims that sound in retaliation theories. For instance, Plaintiff Tavernier alleges that she was terminated for opposing the differential treatment of African-American and older financial analysts who did not receive stipends. *See* Compl. ¶ 21. And Plaintiff Garrett's second count of her Equal Protection Claim alleges that, after she objected to Preston Thomas evaluating her performance, Defendant Johnson-Trammell "retaliated" against her by placing her on administrative leave pending investigation of charges of misconduct. *See* Compl. ¶¶ 40-44. The Individual Defendants contend that, to the extent Plaintiffs assert equal protection liability based on alleged retaliation, their claims are not actionable under the Fourteenth Amendment. *See* Mot. at 13, 18.

No Ninth Circuit or U.S. Supreme Court case has held that a retaliation claim cannot be brought under the Equal Protection Clause. But some courts in this Circuit have reasoned that disparate treatment stemming from retaliation for speech or conduct does not implicate the Fourteenth Amendment.[5] Other Circuits agree.[6] The Court need not resolve this question today,

---

[5] *See, e.g.*, *Mazzeo v. Gibbons*, No. 2:08-CV-01387-RLH, 2010 WL 4384207, at *5 (D. Nev. Oct. 28, 2010) ("The Court concludes that [Plaintiff's] allegations impermissibly combine her First Amendment Retaliation and Fourteenth Amendment Equal Protection claims."), *aff'd sub nom. Mazzeo v. Young*, 510 F. App'x 646 (9th Cir. 2013); *Occhionero v. City of Fresno*, No. 05-CV-1184 LJO-SMS, 2008 WL 2690431, at *8 (E.D. Cal. July 3, 2008) ("[T]his Court agrees with other courts that a claim of different treatment in retaliation for speech is a First Amendment claim which does not invoke the Equal Protection Clause. At its core, [Plaintiff's] claim is First Amendment retaliation, not equal protection."), *aff'd*, 386 F. App'x 745 (9th Cir. 2010).

[6] *See, e.g.*, *Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006) ("To the extent that Plaintiffs raise their retaliation claim under 42 U.S.C. § 1983, asserting violations of equal protection, we have long held that such a theory of liability for retaliatory conduct [does not] come

United States District Court
Northern District of California

however, because even if Plaintiffs' retaliation claims could be stated under the Fourteenth Amendment, the Individual Defendants would be shielded from them by the doctrine of qualified immunity.

Under that doctrine, government officials performing discretionary functions are immune from liability for civil damages so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). To determine whether qualified immunity applies, courts consider (1) whether the plaintiff has sufficiently pled a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to decide which of the two prongs of qualified-immunity analysis to analyze first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011).

As to the second prong, the constitutional right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citations omitted). A case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011). Granting a Rule 12(b)(6) motion to dismiss based on qualified immunity is only appropriate if the Court can determine from the face of the complaint that qualified immunity applies. *Groten v. Calif.*, 251 F.3d 844, 851 (9th Cir. 2001).

Assuming without deciding that Plaintiffs can state retaliation claims under the Fourteenth Amendment, the conduct alleged in the Complaint would not violate a "clearly established"

---

within § 1983") (citations and quotation marks omitted); *Kirby v. City of Elizabeth City, N. Carolina*, 388 F.3d 440, 447 (4th Cir. 2004) ("The claims based on the allegation that [Plaintiff] was treated differently in retaliation for his speech are, at their core, free-speech retaliation claims that do not implicate the Equal Protection Clause.") (citations and quotation marks omitted); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause."); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n. 8 (7th Cir. 1996) (Equal Protection Clause "does not establish a general right to be free from retaliation"); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").

constitutional right. *See Fountain v. Arizona*, 2021 WL 5014090, at *4 (D. Ariz. Oct. 28, 2021) ("Even if the Court were to find that Plaintiff's retaliation claim could be stated under the Fourteenth Amendment, it would not suffice to be a 'clearly established' right, and [Defendant] would be protected by qualified immunity."). As noted above, it is undisputed that neither the U.S Supreme Court nor the Ninth Circuit has recognized an Equal Protection Claim as viable under a retaliation theory like the one in this case. The constitutional question at issue here thus cannot be said to be "beyond debate," as reflected in disparate decisions as to whether a retaliation claim can ever be stated under the Fourteenth Amendment. *Compare Knox v. City of Portland*, No. 06-CV-459-HA, 2006 WL 2233482, at *3 (D. Or. Aug. 3, 2006) ("[T]his court concludes that plaintiff is precluded from bringing a retaliation claim under 42 U.S.C. § 1983 based on alleged violations of her Equal Protection rights."); *with Ballou v. McElvain*, No. 19-CV-5002-RBL, 2020 WL 1904062, at *4 (W.D. Wash. Apr. 17, 2020) (recognizing that whether an Equal Protection claim may be based on retaliation "is a close question," but finding such a claim "plausible" in the absence of a Ninth Circuit or Supreme Court case holding otherwise), *aff'd on different grounds*, 14 F.4th 1042 (9th Cir. 2021).

The Court can therefore determine from the face of the complaint that the Individual Defendants are shielded by the doctrine of qualified immunity. To the extent Plaintiffs attempt to plead retaliation claims against the Individual Defendants under the Fourteenth Amendment, those claims fail as a matter of law and are **DISMISSED** without leave to amend.

### D. Procedural Due Process

Both Plaintiffs bring multiple Procedural Due Process claims against the Individual Defendants under the Fifth and Fourteenth Amendments of the U.S. Constitution. *See* Dkt. No. 1 at 10, 14. Plaintiffs' Fifth Amendment claims are dismissed with prejudice and without leave to amend because the defendants here are state officials, and the Fifth Amendment only applies to the federal government. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). The Individual Defendants contend that Plaintiffs' Fourteenth Amendment Procedural Due Process Claims also fail because Plaintiffs fail to allege that they took advantage of remedies available to them under state law in the form of a petition for a writ of mandate. Mot. at 15. The Court agrees.

11

1   Procedural due process claims under Section 1983 are generally barred when an adequate
2   remedy exists under state law. *See Lake Nacimiento Ranch Co. v. San Luis Obispo Cty.*, 841 F.2d
3   872, 879 (9th Cir. 1987) (citing *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981)).
4   Here, the Complaint does not allege, and the Opposition Brief does not contend, that
5   Plaintiffs took advantage of adequate and available state remedies by filing a writ of mandamus
6   under Section 1094.5 of the California Code of Civil Procedure to challenge their adverse
7   administrative decisions. *See Arroyo Vista Partners v. Cty. of Santa Barbara*, 732 F. Supp. 1046,
8   1053 (C.D. Cal. 1990) ("[R]elief pursuant to a Writ of Mandate under § 1094.5 of the California
9   Code of Civil Procedure is available to challenge the substance and evidentiary basis for a
10  decision, and also extends to whether the Board proceeded in a manner that denied the plaintiff a
11  fair hearing or otherwise suffered from procedural deficiencies in rendering its administrative
12  decisions."). The Court therefore finds that Plaintiffs have not stated a cognizable procedural due
13  process claim because adequate state remedies are still available. *See Killgore v. City of S. El*
14  *Monte*, No. 19-CV-00442-SVW-JEM, 2019 WL 8105371, at *12 (C.D. Cal. Dec. 19, 2019) ("This
15  Court agrees with other California district courts that the specific remedies available to Plaintiff
16  under state law— namely administrative mandamus under § 1094.5 and appeal to state superior
17  court under Cal Gov't Code § 53069.4 make it impossible to sustain a procedural due process
18  challenge here.").[7] Plaintiffs' Procedural Due Process Claims are accordingly **DISMISSED.**
19  Plaintiffs may amend their complaint to allege, if true, that they exhausted all the state remedies
20  available to them.
21  //

---

[7] *See also Patel v. City of S. El Monte*, No. CV 18-04077-GW, 2019 WL 1785440, at *8 (C.D. Cal. Jan. 14, 2019) ("Plaintiffs cannot sustain their procedural due process claim because there are adequate state remedies available to challenge the administrative officer's decision. Specifically, '[f]ines and penalties imposed by local agencies can be reviewed by either administrative mandamus under [Cal. Civ. Proc. Code] § 1094.5 or a de novo action in superior court' under California Government Code § 53069.4(b)(1)."), *aff'd in part, rev'd in part and remanded*, 827 F. App'x 669 (9th Cir. 2020); *MHC Fin. Ltd. P'ship Two v. City of Santee*, No. 12-CV-0253 W DHB, 2012 WL 6675279, at *2 (S.D. Cal. Dec. 21, 2012) ("It is well settled that a procedural due process claim is not cognizable when there is an available state remedy. Here, an available state remedy exists: a writ of mandamus.") (citations and quotation marks omitted).

12

### E. Substantive Due Process

Both Plaintiffs also bring Substantive Due Process claims against the Individual Defendants under the Fourteenth Amendment. *See, e.g.*, Compl. at 10, 14. To establish a substantive due process claim, a plaintiff must as a threshold matter show a government deprivation of life, liberty, or property. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Because neither Plaintiff has done so, the Court dismisses their Substantive Due Process claims.

Both Plaintiffs contend that, as permanent employees, they had property rights and liberty interests in their continued employment with OUSD. *See* Compl. ¶¶ 32, 48.

The Court first considers the alleged property interest. To begin with, Plaintiffs do not cite any precedent establishing a substantive due process right to continued employment. Nor could they. No Supreme Court or Ninth Circuit case has held that substantive due process protects the right to a particular public employment position. *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996–97 (9th Cir. 2007) ("[M]ost courts have rejected the claim that substantive due process protects the right to a particular public employment position, and we have yet to decide the issue."), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 128 S. Ct. 2146 (2008). Courts in this District have accordingly found it "unclear" whether there is any substantive due process right in continued employment. *See, e.g.*, *Richter v. Ausmus*, No. 19-CV-08300-WHO, 2020 WL 1429758, at *4 (N.D. Cal. Mar. 24, 2020) ("Courts have found that it is unclear whether a substantive due process right in continued employment exists" (citations and punctuation omitted)); *Moody v. Cty. of Santa Clara*, No. 5:15-CV-04378-EJD, 2019 WL 6311406, at *5 (N.D. Cal. Nov. 25, 2019) ("[W]hether a substantive due process right in continued employment even exists is unclear.").

It follows that even if Plaintiffs could state plausible substantive due process claims based on their property interests in continued employment, the Individual Defendants would be shielded from such claims by the doctrine of qualified immunity. That is so because the conduct alleged would not violate a "clearly established" constitutional right under Supreme Court (or even Ninth Circuit) case law. *See, e.g.*, *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738 ("[G]overnment officials

13

performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Cooper v. Cate*, No.10-CV-899-AWI-DLB, 2011 WL 5554321, at *5 (E.D. Cal. Nov. 15, 2011) ("In light of the circuit split and the silence of the Ninth Circuit, a reasonable official in the Defendants' positions would not have known that their conduct violated the Fourteenth Amendment's substantive due process protections."). The Court can thus determine from the face of the Complaint that Plaintiffs have not pled and cannot plead a substantive due process claim against the Individual Defendants for deprivation of their property interests in continued employment.

Plaintiffs also have not pled deprivation of a protected liberty interest. While the Ninth Circuit has recognized a substantive due process right to occupational liberty, this narrow right only protects against "government employer actions that foreclose access to a particular profession to the same degree as government regulation." *Engquist*, 478 F.3d at 998. A substantive due process claim based on the violation of this right is limited to "extreme cases," such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." *Id.* at 997-98 (citations and quotation marks omitted).

Because the Complaint does not allege that any of the Individual Defendants' actions foreclosed Plaintiffs' access to their respective professions, the Court finds that the Complaint has not pled a plausible substantive due process claim for government deprivation of occupational liberty. Plaintiffs' Substantive Due Process claims are accordingly **DISMISSED.** While it appears unlikely that Plaintiffs can plead a substantive due process claim for occupational liberty based on the alleged fact pattern, the Court will nevertheless allow leave to amend this claim.

### F. FEHA

Both Plaintiffs seek to assert claims based on alleged violations of California's Fair Employment and Housing Act. *See* Compl. ¶¶ 67, 69. To do so, the Complaint first states the applicable statute and then provides the following allegations:

> Plaintiff TAVERNIER [GARRETT] incorporates by reference all allegations contained in this complaint describing the wrongful employment practices against her and, asserts that DEFENDANTS' actions herein amount to violations of FEHA.

*See* Compl. ¶¶ 67, 69. It should go without saying that this conclusory pleading—which fails to specify which of the Individual Defendants committed the alleged violation and does not contain even a bare recitation of the elements of a FEHA claim—does not meet federal pleading requirements. *See* Fed. R. Civ. P. 8; *see also Twombly*, 550 U.S. at 570. Plaintiffs' FEHA claims are accordingly dismissed but with leave to amend.

Should Plaintiffs choose to amend their FEHA claims, they must comply with all relevant legal requirements. Plaintiffs should first note the California Supreme Court has made clear that individuals (like the Individual Defendants here) cannot be held liable under FEHA for claims based on discrimination or retaliation. *See Reno v. Baird*, 18 Cal. 4th 640, 643 (1998); *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1160 (2008). Plaintiffs should also note that the findings from their respective *Skelly* decisions may be binding in this civil action unless Plaintiffs prove that they first exhausted their judicial remedies by filing a writ of mandate in state court to get their respective *Skelly* decisions overturned. *See Miller v. City of Los Angeles*, 169 Cal. App. 4th 1373, 1379, 87 Cal. Rptr. 3d 510, 514 (2008) ("[U]nless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions.").

## IV.    CONCLUSION

The Court **GRANTS** the OUSD Board's Motion to Dismiss with prejudice and dismisses the OUSD Board from this action with prejudice. The Court also **GRANTS IN PART and DENIES IN PART** the Individual Defendants' Motion to Dismiss. Specifically, the Court denies the Individual Defendant's motion as to Plaintiff Garrett's sex discrimination claim against Defendant Kyla Johnson-Trammell but grants the motion as to the remaining claims. Any amended complaint must be filed within 28 days from the date of this Order. Plaintiff may not

add any new causes of action or defendants to an amended complaint.[8]

Finally, the Court **SETS** a telephonic case management conference on March 8, 2022, at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The parties shall file a joint case management statement no later than one week before the case management conference.  This Order **TERMINATES** Docket Nos. 14 and 34.

**IT IS SO ORDERED.**

Dated: 2/4/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[8] Plaintiff Tavernier requests leave to add a claim based on the Age Discrimination in Employment Act (ADEA).  *See* Opp. at 18.  Granting this request would be futile because her ADEA claim would necessarily be subject to dismissal.  She cannot state an ADEA claim against the Individual Defendants as a matter of law because "the ADEA does not allow for suit against individuals[.]" *Stilwell v. City of Williams*, 831 F.3d 1234, 1245 (9th Cir. 2016).  And as discussed in Section III.A, the OUSD and the OUSD Board, which are the only other potential defendants, are shielded from her claims by sovereign immunity.  *See id.* (State employers cannot be sued by state employees under the ADEA because Congress did not abrogate the States' sovereign immunity to suits by private individuals) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91, 120 S. Ct. 631, 649 (2000)).  In short, "state employees, in practice, cannot sue under the ADEA." *Id.*  The Court therefore denies Plaintiffs' request.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal.") (citations omitted).

16